## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| DEANDREA GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02346-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff DeAndrea Gray brings *Bivens* and Federal Tort Claims Act ("FTCA") claims against Defendants United States of America, Edna Prince, F. Cabanero, Sharonda Dobbins-Branch, Dustin Bowden, Frank Hargrove, Sheena Bailey, and Cynthia Gaia.[1]  For the second time, Defendants move to dismiss Plaintiff's Amended Complaint or, in the alternative, for summary judgment.  (ECF No. 77.)  Plaintiff responded in opposition and Defendants replied.  (ECF Nos. 78 & 80.)  For the reasons explained below, the Court now **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

## BACKGROUND

### I.    Plaintiff's Claims

Plaintiff's suit arises out of the allegedly insufficient medical care he received while

---

[1] Plaintiff also sued the Director of the Bureau of Prisons, Hugh Hurwitz.  This Court dismissed Defendant Hurwitz in its Order on Defendants' first Motion to Dismiss.  (ECF No. 66 at PageID 434.)  The Sixth Circuit affirmed.  (ECF No. 74 at PageID 461.)

incarcerated at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis").  In particular, Plaintiff asserts in his Amended Complaint that Defendants denied him adequate medical care after he suffered a stroke in April 2012.  (ECF No. 29-1 at PageID 185.)  Plaintiff claims that he had slurred speech, he was experiencing numbness and tingling throughout his body, and he felt disoriented during this time.  (*Id*.)  Plaintiff's unit officer, Mr. Miller, observed Plaintiff's condition and immediately took him to the medical department.  (*Id*.)  There, Defendant Dobbins-Branch examined Plaintiff by taking his blood pressure.  (*Id*.)  She allegedly told him that he was not suffering a stroke or a heart attack and that she would order an x-ray of his hands and spine to determine the cause of his sensations.  (*Id*.)  Plaintiff then went back to his unit.  (*Id*.)

But Plaintiff's condition did not improve.  He alleges that the facility staff denied him medical care throughout his time at FCI Memphis.  (*Id.* at PageID 186.)  He also claims, however, that Defendants Prince, Dobbins-Branch, and Gaia evaluated him medically during this time.  (*Id.*)  In any event, Plaintiff claims Defendants denied him additional testing and pain medication to deal with his "constant" and "severe pain" that prevented him from sleeping.  (*Id*.)

Around seven weeks after Plaintiff allegedly suffered the stroke, an optometrist evaluated Plaintiff as part of his routine clinical treatment for hypertension.  (*Id*.)  The optometrist allegedly informed Plaintiff that "she (the optometrist) discovered symptoms indicating that he was suffering from serious medical conditions."  (*Id*.)  During his follow-up appointment with Defendant Prince, Plaintiff allegedly learned that the optometrist had observed signs of carotid artery disease and that she recommended a Doppler ultrasound exam for Plaintiff.  (*Id*.)  Even so, Defendant Prince allegedly refused to run tests to determine whether he had suffered a stroke although he was still experiencing numbness and tingling.  (*Id*.)  What is more, Plaintiff alleges

Defendant Prince did not give him any medication and failed to include the optometrist's full report in his medical file. (*Id.*)

Over the months that followed, Plaintiff continued to experience symptoms such as weakness, atrophy in his left side, and severe chest pain. (*Id.* at PageID 187.) Defendants Prince, Cabanero, and Gaia all examined Plaintiff during this time, but none provided any medication. (*Id.*)

A cardiothoracic surgeon then examined Plaintiff and performed an arteriogram to check for stenosis of Plaintiff's blood vessels. (*Id.*) Despite the cardiothoracic surgeon allegedly finding evidence of significant carotid artery stenosis, Defendant Prince told Plaintiff that he was physically fit with no sign of atrophy or deficits. (*Id.*) And according to Plaintiff, Defendants knew of the severity of his medical conditions and deliberately failed to tell Plaintiff about his diagnoses. (*Id.* at PageID 194.)

Plaintiff's condition allegedly continued to deteriorate. He asserts that he suffered from neurological and skeletal conditions that Defendants failed to treat even though he made repeated requests for assistance. (*See id*. at PageID 189–90.) And in December 2014, Plaintiff "took a turn for the worse" and collapsed to the floor, unable to move or walk from severe back pain. (*Id.* at PageID 190.) But Defendant Prince refused to send him to the hospital. (*Id.* at PageID 191.)

Then Plaintiff collapsed again in May 2015. At that time, Defendants transferred him to Delta Medical Center. (*Id.* at PageID 192.) An MRI revealed damage to his spine, leading Plaintiff to have surgery. (*Id.* at PageID 193.) And after the hospital released him, Plaintiff alleges that Defendants placed him in the Special Housing Unit and denied him the medical necessities he needed to recover. (*Id.*)

II.     **Defendants' First Motion to Dismiss and the Sixth Circuit's Opinion**

Plaintiff then sued Defendants for negligence and violations of his constitutional rights. (*Id*. at PageID 217.)  But Defendants moved to dismiss his complaint or, in the alternative, for summary judgment.  (ECF No. 55.)  This Court, construing it as a motion for summary judgment, granted the Motion after finding that Plaintiff failed to exhaust his administrative remedies.  (ECF No. 66.)

Next Plaintiff appealed the Court's Order.  (ECF No. 69.)  The Sixth Circuit affirmed in part, vacated in part, and remanded the case for further proceedings.  (ECF No. 74.)  It found that Plaintiff exhausted his administrative remedies on his FTCA claims and that there was a genuine dispute about whether Plaintiff exhausted his administrative remedies on his *Bivens* claims.  (*Id.* at PageID 459.)

The Sixth Circuit noted that Defendants did not present enough evidence to show that Plaintiff failed to exhaust his *Bivens* claims.  Instead, Defendants attached only a "conclusory declaration" and a SENTRY report that "contain[ed] insufficient information to show whether Gray exhausted his administrative remedies."  (*Id.* at PageID 459–60.)  The SENTRY report "merely lists a series of numbers, dates, and abbreviations" that failed to show clearly which submissions Plaintiff failed to exhaust.  (*Id.*)  In short, the Sixth Circuit found that "defendants failed to meet their initial burden to show that Gray failed to exhaust his administrative remedies with respect to his *Bivens* claims, and a genuine dispute of material fact exists as to whether he did."  (*Id.* at PageID 461.)

Defendants now claim that their new Motion addresses "the Sixth Circuit's evidence-related concerns" and presents "non-conclusory, detailed evidence and argument showing that the Court should dismiss" Plaintiff's claims.  (ECF No. 77 at PageID 467.)  And so, they move to

dismiss the complaint or, in the alternative, for summary judgment on Plaintiff's claims. (*Id.* at PageID 466.)

## LEGAL STANDARD

### I.   Converting a Rule 12(b)(6) Motion to a Motion for Summary Judgment

Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Rule 56. (ECF No. 77.) Defendants have attached affidavits and exhibits to the Motion that are outside the scope of the pleadings. (*See, e.g.*, ECF Nos. 77-5, 77-6, 77-7, 77-8, 77-9, & 77-10.) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104–05 (6th Cir. 2010). Additional notice is not required when the non-moving party has (1) notice that the Court may convert a motion to dismiss into one for summary judgment and (2) enough time to produce evidence to refute the moving party's evidence. *See Wysocki*, 607 F.3d at 1105.

Plaintiff here had notice that the Court might convert this Motion into a motion for summary judgment. First, Defendants state in their Motion that they are moving to dismiss *or, in the alternative, for summary judgment*. (ECF No. 77 at PageID 466 (emphasis added).) Their Motion also summarizes the legal standard for summary judgment. (*Id.* at PageID 469.) Plus this Court converted Plaintiff's first Motion into a motion for summary judgment because, there too, Defendants attached affidavits outside the scope of the pleadings. As a result, Plaintiff should not be surprised that the Court is treating this motion the same way. Finally, Plaintiff too

had a reasonable chance to present materials outside the pleadings.[2]  (*See* ECF No. 78.)  So the Court converts Defendants' Motion into a motion for summary judgment.

## II.     Summary Judgment Standard

One is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Id.* at 448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.  This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914

---

[2] Plaintiff did not attach any evidence to his response to Defendants' Motion for Summary Judgment.  (*See* ECF No. 78.)  That said, he never asked the Court for additional time to collect evidence.  And he never argued that he could not adequately respond to the Motion.

(6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)).  But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  As a result, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In the end, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251).  And statements in affidavits that are "nothing more than rumors, conclusory allegations and

7

subjective beliefs" are insufficient evidence.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

## ANALYSIS

Defendants here argue that the Court should dismiss Plaintiff's *Bivens* claims for six reasons: (1) he failed to exhaust his administrative remedies; (2) his claims are time barred; (3) he cannot state a claim for deliberate indifference under the Eighth Amendment; (4) the individual Defendants are entitled to qualified immunity; (5) Defendants Bailey, Gaia, and Hargrove are immune from suit under *Bivens*; and (6) Plaintiff never served Defendants Prince, Cabanero, Dobbins-Branch, and Bowden.  (ECF No. 77 at PageID 470.)  Defendants also argue that Plaintiff's FTCA claims fail because he did not file a certificate of good faith with his complaint.  (*Id.*)

Plaintiff responds that because Defendants' Motion is successive, this Court should take no action.  (ECF No. 78 at PageID 705.)  He also argues that the Court has to follow the Sixth Circuit's mandate, and so it cannot reconsider Defendants' arguments.  (*Id.* at PageID 706.)  In sum, he claims that "[t]he defendants' arguments are repetitive, have been litigated on appeal, and decided against the Defendants."  (*Id.* at PageID 707.)

The Court first addresses Plaintiff's mandate argument.  Under the "mandate rule," a district court "is bound to the scope of the remand issued by the court of appeals."  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  And under the "doctrine of the law of the case," the findings by a court of appeals on issues of law are binding on the district court on remand. *Id.*  The Sixth Circuit found that Plaintiff exhausted his administrative remedies for his FTCA claims, and so it vacated this Court's grant of summary judgment on that issue and remanded for further proceedings.  (ECF No. 74 at PageID 459.)  But as to his *Bivens* claims, the Sixth Circuit

found that, based on the record at the time, there was a genuine dispute of material fact about whether Plaintiff exhausted his remedies. (*Id.* at PageID 461.) So likewise, it vacated the Court's grant of summary judgment and remanded for further proceedings on that issue too. (*Id.*)

Given the Sixth Circuit's decision, the Court will not violate either the mandate rule or the law-of-the-case doctrine by considering Defendants' Motion here. First, the Sixth Circuit remanded the case for further proceedings. And second, Defendants do not ask the Court to reconsider any of the Sixth Circuit's findings. True enough, the Sixth Circuit held that Defendants' first motion for summary judgment failed to show the lack of a genuine dispute of material fact about whether Plaintiff exhausted his *Bivens* claims. But Defendants have now filed a new Motion with additional evidence. So because the Sixth Circuit remanded the case for further proceedings, the Court can, and will, now consider Defendant's Motion.

## I.   Exhaustion of Plaintiff's Administrative Remedies for His *Bivens* Claims

Defendants first argue that Plaintiff did not exhaust his administrative remedies for any of his medical care claims. (ECF No. 77 at PageID 470.) In response, Plaintiff counters that he did exhaust all available remedies. (ECF Nos. 78 at PageID 707; 29-1 at PageID 180–81; 62-1.)

### A.   Legal Standards for Exhaustion Under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), prisoners can only sue based on prison conditions if they first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a).[3] This mandatory exhaustion requirement applies to *Bivens* claims too. *See Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). Indeed, § 1997e(a)'s exhaustion requirement applies

---

[3] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"There is no uniform federal exhaustion standard." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). What is more, the administrative remedies process "need not meet federal standards, nor must [it] be plain, speedy, and effective." *Porter*, 534 U.S. at 524 (internal citations and quotation marks removed). To that end, "[a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox*, 851 F.3d at 590. Inmates must make "affirmative efforts to comply with the administrative procedures," and courts should consider "whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Arflack v. Cnty. of Henderson*, 412 F. App'x 829, 831 (6th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Instead, a defendant "has the burden to plead and prove by a preponderance of the evidence" that the prisoner did not exhaust the available administrative remedies. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Thus, a complaint is subject to dismissal if a defendant proves that "no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox*, 851 F.3d at 590. So in the end, summary judgment on exhaustion "is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher*, 639 F.3d at 240 (quoting Fed. R. Civ. P. 56(a)).

### B.      The BOP's Administrative Remedy Procedures

The Bureau of Prisons ("BOP") has a four-step administrative remedy process.  **Step 1:**

If an inmate wants to file a grievance, he must first try to resolve the issue informally with staff

(a "BP-8" request).  28 C.F.R. § 542.13(a).  **Step 2:**  If the staff member cannot resolve the issue,

the inmate may file a formal written Administrative Remedy Request with the Warden at his

facility (a "BP-9" request).  *Id.* at § 542.14(a).  **Step 3:**  If unsatisfied with the Warden's

response, the inmate may appeal to the Regional Director (a "BP-10" appeal) within twenty days

of when the Warden signed the response.  *Id.* at § 542.15(a).  **Step 4:**  And then, if unsatisfied

with the Regional Director's response, the inmate may appeal to the General Counsel at the

Central Office (a "BP-11" appeal) within thirty days of when the Regional Director signed its

response.  *Id.*  "Appeal to the General Counsel is the final administrative appeal."  *Id.*

This process is not without nuance, however.  If the inmate has a valid reason for delay,

he may seek an extension of time to appeal.  *Id.*  A "valid reason for delay means a situation

which prevented the inmate from submitting the request within the established time frame."  *Id.*

at § 542.14(b).  For example, an inmate has a valid reason for delay when the inmate physically

could not prepare the request or appeal.  *Id.*

The BOP must also respond to inmate submissions within a certain timeframe.  If the

BOP accepts a submission, the coordinator at each administrative level has a certain number of

days to respond.  *Id.* at § 542.18.  And if the coordinator does not respond during this timeframe,

the inmate may consider the submission denied at that level and move to the next stage.  *Id.*

What is more, an administrative remedy coordinator at any level can reject a request or

appeal if it fails to meet one of the filing requirements.  *Id.* at § 542.17(a).  This differs from a

denial, however.  If the BOP coordinator rejects a submission, they must explain why and give

11

the inmate a reasonable extension of time to correct the mistake and refile.  *Id.* at § 542.17(b).  If the coordinator does not give the inmate an extension of time, the inmate may then appeal the rejection to the next appeal level.  *Id.* at § 542.17(c).  The coordinator at the next appeal level may then affirm the rejection; direct the lower level to accept the submission; or accept the submission for filing.  *Id.*

    **C.**     **Analysis of Plaintiff's Exhaustion**

    Defendants attached to their Motion a declaration from Howard Williams, a Legal Assistant and Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP. Mr. Williams explains the BOP's computerized records for Plaintiff's administrative remedy history ("ARH" or "Administrative Remedy History sheet").  (*See* ECF No. 77-5.)  They also provide what Mr. Williams swears is a true and accurate copy of Plaintiff's ARH.[4]  (ECF No. 77-8.)  That ARH is a computer printout with numbers, coded language, abbreviations, and cryptic explanations.  But according to Mr. Williams' sworn testimony, it "reflects all of the formal Bureau administrative grievances that Plaintiff has filed regardless of topic."  (ECF No. 77-5 at PageID 653.)

    Mr. Williams then explains what terms on that ARH mean, such as "REMEDY-ID," "RCV-OFC," and "STATUS CODE."  (*Id.* at PageID 653–54.)  And he details each administrative remedy entry related to Plaintiff's medical claims.  (*See id.*)  So unlike their first Motion to Dismiss (ECF No. 55) where they attached the SENTRY printout and concluded that Plaintiff failed to exhaust his remedies, Defendants here attach Plaintiff's complete

---

[4] This sheet differs from the SENTRY report Defendants provided with their first Motion to Dismiss.  There, they only provided a "SENTRY computerized Administrative Remedy Generalized Retrieval" sheet.  (ECF BNo. 52-5 at PageID 283.)  The Administrative Remedy History Sheet attached to its motion here has more detailed information about Plaintiff's administrative remedy entries.

Administrative Remedy History sheet and explain the contents on that sheet under oath, and their position how Plaintiff failed to exhaust his administrative remedies.  Plaintiff meanwhile attaches some documentation about his grievances that raise questions about Defendants' position.

According to Mr. Williams' interpretation of the ARH, Plaintiff made only three Administrative claims related to his medical care: (1) Claim 753685, (2) Claim 816342, and (3) Claim 827225.  (*See* ECF No. 77-5 at PageID 654; 77-8.)  But, as explained below, Claim 854880 and another unnumbered claim also seem to relate to Plaintiff's medical care.[5]

The ARH lacks much detail about these administrative cases.  For example, all it says about Claim 753685 is that the case concerns "other medical matters."  (ECF No. 77-8 at PageID 667.)  So based on the ARH only, it is hard to determine any alleged facts about Plaintiff's grievances.  The Court is then left to piece together the sequence of events by using the dates in Plaintiff's Amended Complaint, the dates in some other documents, and the dates in the ARH.  The court will now take each claim one at a time.

i.      **Claim 753685**

Plaintiff alleges that in September 2013, he filed a grievance about his inadequate medical care with the Warden of FCI Memphis and that the Warden responded on October 30.  (ECF No. 29-1 at PageID 189.)  And Plaintiff attached the Warden's response to show he exhausted his remedies.  (ECF No. 62-3 at PageID 363.)  That response from the Warden shows that Case Number 753685 related to Plaintiff's alleged stroke and his allegedly inadequate medical care.  (*Id.*)  Likewise, the ARH from Defendants shows that Plaintiff filed a BP-9 form

---

[5] The Administrative Remedy History sheet shows that Plaintiff's other two Administrative Cases did not concern medical matters.  Administrative Case Number 741173 involved "DHO Appeal" (ECF No. 77-8 at PageID 667) and Administrative Case Number 839359 involved "Administrative Remedy Procedures" (*id.* at PageID 671).  Plaintiff does not provide any evidence that these cases involved medical matters.

in Claim 753685 in October 2013 and that the Warden responded before the end of that month. (ECF No. 77-8 at PageID 667.)

After FCI Memphis received Plaintiff's BP-9 request on October 17, 2013, the facility closed the case. (ECF Nos. 77-8 at PageID 667; 77-5 at PageID 655.) In his response to the BP-9 request, the Warden explained that Plaintiff could appeal to the Regional Director within twenty days if he disagreed with the Warden's response. (ECF No. 77-9 at PageID 689.) And so Plaintiff then submitted a BP-10 appeal to the Regional Office in November 2013. (ECF No. 77-8 at PageID 668.) Then on December 13, 2013,[6] the Regional Office closed the case with explanation ("December 2013 response").[7] (Id.; ECF No. 77-5 at PageID 655.) Plaintiff's ARH shows that Plaintiff failed to exhaust his administrative remedies for Claim Number 753685, because he did not timely appeal that response from the Regional Office.

To exhaust his administrative remedies, the next step Plaintiff should have taken was to file a BP-11 appeal to the Central Office within thirty days of the Regional Office's December 2013 response. *See* 28 C.F.R. § 542.15. But Plaintiff either failed to appeal that response at all or he waited two-and-a-half years (until April 2016) to do so.[8] Under either scenario, he failed to exhaust this claim.

According to BOP records, Plaintiff waited until March 2016 to submit a second BP-10 to the Regional Office for Claim 753685 ("March 2016 BP-10"). (ECF Nos. 62-3 at PageID 371; 77-8 at PageID 672; 77-5 at PageID 655.) The Regional Director rejected that appeal for status reason "WRL," which Mr. Williams explains meant that he filed at the wrong level. (ECF

---

[6] The Regional Office had until December 18, 2013, to respond. (ECF No. 77-8 at PageID 668.) So its response was timely.

[7] Neither party attached the Regional Office's response.

[8] As the Court explains later, there is a question whether Plaintiff intended the BP-11 he submitted in April 2016 to be part of this claim at all or did someone assign it the wrong number. (ECF

No. 77-5 at PageID 655.)  Next, according to BOP records, Plaintiff filed a BP-11 appeal to the Central Office in April 2016.  (ECF Nos. 62-3 at PageID 373; 77-8 at PageID 673.)  The Central Office rejected the appeal for the status reason "LEG UTA RAP OTH."  (*Id.*)  Mr. Williams explains that this status reason "means that Plaintiff's appeal was untimely; he did not provide a copy of the Regional Appeal; and there are additional remarks explaining the reason for rejection."  (ECF No. 77-5 at PageID 655 n.1.)  In the "Remarks" section of his Administrative History Remedy sheet, the Central Office wrote, "Your 853685[9] Appeal was responded to by the Region on 12-13-13.  It is over 2 years late."  (ECF No. 77-8 at PageID 673.)

The BOP records show that, in July 2016, Plaintiff tried to appeal to the Central Office again.  (ECF No. 77-8 at PageID 674.)  This time, the Central Office rejected the appeal for status reason "UTA MEM OTH."  (*Id.*)  Mr. Williams explains that this status reason "means that Plaintiff's appeal was untimely, and there are remarks explaining the reason for rejection."  (ECF No. 77-5 at PageID 655.)  In the "Remarks" section of the ARH for this appeal, the Central Office explained that he filed his April 2016 appeal 864 days after the Regional Office's December 2013 response, and that he needed a staff letter to appeal it.  (ECF No. 77-8 at PageID 674.)  Plaintiff never provided a letter from a staff member or otherwise argued that an extension of time was appropriate under 28 C.F.R. § 542.15(a).  After receiving the Central Office's response, Plaintiff did not try to appeal again.

Defendants thus argue that the ARH shows that Plaintiff failed to exhaust his administrative remedies.  The Court agrees.  The Regional Office responded to Plaintiff's BP-10 appeal on December 13, 2013.  (ECF Nos. 77-8 at PageID 668; 77-5 at PageID 655.)  Plaintiff

---

[9] This is presumably a typo.  The Administrative Case Number for this claim is 753685, not 853685.  (*See* ECF No. 77-8 at PageID 673.)

had thirty days from the date the Regional Director signed the response to appeal to the Central Office.  28 C.F.R. § 542.15(a).  This means he needed to appeal by January 12, 2014.  But he did not do so.

All in all, because Plaintiff's appeal of the Regional Office's December 2013 response was untimely, the Court finds that Plaintiff failed to exhaust his administrative remedies.  *See Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"); *Petty v. Rush*, No.08-159-GFVT, 2010 WL 1796573, at *7 (E.D. Ky. May 4, 2010) (finding that a claim is not properly exhausted when a prison rejects a prisoner's grievance as untimely because the prisoner did not file it within the prescribed period); *Nunez v. Fed. Bureau of Prisons*, No. 7:08-CV-201-KKC, 2008 WL 5096001, at *3 (E.D. Ky. Dec. 1, 2008) ("A prisoner may not simply ignore an agency's procedural requirements for administrative appeals, for permitting him to do so would turn the requirement that a prison exhaust administrative remedies prior to filing suit into a meaningless formality.").  Plaintiff should have appealed within thirty days of the Regional Office's response.  *See* 28 C.F.R. § 542.15(a).  What is more, if he waited until March or April 2016 to appeal, he did not argue that he had a valid reason for delaying his appeal under 28 C.F.R. §§ 542.15(a) and 542.14(b).  (*See* ECF No. 62-3 at PageID 371.)  And so the Court finds that Defendants have carried their burden of showing by a preponderance of the evidence that Plaintiff failed to exhaust his administrative remedies for Claim 753685.

### ii.  Unnumbered Claim: What if Plaintiff Did Not Intend to Appeal Claim Number 753685 in March and April 2016?

It is unclear that Plaintiff intended for his March 2016 BP-10 appeal to act as an appeal in Claim 753685.  In fact, the only thing connecting the BP-10 to Claim 753685 is the case number

that someone wrote in the "Response" section of the grievance.  (*See* ECF No. 62-3 at PageID

371.)  Neither party explains who assigned the case number to the submission.

       Based on the content of Plaintiff's appeals in 2016, the Court finds it plausible that he

sought to appeal the BOP's response for a different administrative case.  Consider his March

2016 BP-10 appeal where Plaintiff wrote that he "filed a BP-8 on September 29, 2015 against the

medical department for deliberate indifference to his serious medical needs."  (*Id.*)  Although

partly illegible, Plaintiff appears to have attached the BP-8 to his response to Defendants' first

Motion to Dismiss.  (ECF No. 62-3 at PageID 359.)  In that BP-8, he complains of Defendants'

deliberate indifference to his ongoing serious medical needs, their failure to document his

medical encounters, delays in treatment, and intentional infliction of pain and suffering.  (*Id.*)

       Plaintiff further explained that he filed a BP-9 on October 13, 2015, but that the Warden

never responded.  (*Id.* at PageID 371–72.)  Although Plaintiff did not attach this BP-9, he claims

that "[w]hen the institution failed to respond in this matter, they as well, failed to return the BP-9

to (Plaintiff)."  (*Id.* at PageID 377.)  Because the Warden failed to respond, Plaintiff then filed

his March 2016 BP-10 appeal to the Regional Office.  (*Id.*)  Somehow, this BP-10 appeal has the

number 753685.  Did the BOP give this number or did Plaintiff?  The answer is unknown.

       After the Regional Office rejected the March 2016 BP-10, Plaintiff appealed to the

Central Office in April 2016.  (*Id.* at PageID 373.)  Again, he mentioned that he was appealing

grievances he filed in September and October 2015, not 2013.  (*Id.*)  And after the Central Office

rejected his April 2016 appeal, Plaintiff asked the Central Office to reconsider its denial.  (*Id.* at

PageID 376.)  There, he explained that his appeal was timely and that "[t]he central office is

confusing this appeal with an earlier appeal of 2013 (for claim number 753685)."  (*Id.* at PageID

377.)

In the end, the Court finds it plausible that Plaintiff did not intend for his March 2016 BP-10 to appeal Claim 753685.  Instead, he argues convincingly here that he intended to appeal a BP-8 and BP-9 request submitted in September and October 2015.  (*See* ECF Nos. 62-3 at PageID 37; 29-1 at PageID 181.)  But if he filed a BP-9 in 2015, however, Plaintiff's ARH does not show it.  Defendants therefore argue less convincingly here that he failed to exhaust.

This Court finds instead that there is a genuine issue of material fact about whether Plaintiff exhausted his administrative remedies for this claim.  Plaintiff filed a BP-8 (ECF No. 62-3 at PageID 359) and says he filed a BP-9 that the Warden never responded to or returned. The record also reflects that he tried to appeal this missing BP-9 to the Regional Office (*id.* at PageID 371) and to the Central Office (*id.* at PageID 373).  The bottom line is that it is not clear what happened to Plaintiff's BP-9 or why Plaintiff's BP-10 and BP-11 from 2016 reflect a claim number (753685) from 2013.

As a result, Defendants have failed to show "the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion."  *Risher*, 639 F.3d at 240 (quoting Fed. R. Civ. P. 56(a)).  The Court thus finds that there is a genuine issue of material fact about whether Plaintiff exhausted the claims in this BP-8.  (ECF No. 62-3 at PageID 359.)  The Court thus **DENIES** summary judgment here.

### iii.    Claim 816342

As for Case Number 816342, the ARH shows that Plaintiff filed a BP-9 request alleging improper medical care in April 2015.  (ECF No. 77-8 at PageID 668.)  And Plaintiff alleges in his Amended Complaint that he filed one in May 2015 "to address his medical needs" following his spine surgery. (ECF No. 29-1 at PageID 193.)  Defendants do not dispute that Case Number

816342 relates to his allegedly poor medical care after his back surgery. (*See id.* at PageID 191–93.)

But, as Defendants argue, Plaintiff's ARH also shows that he did not exhaust his administrative remedies for this claim because he did not refile after the facility rejected his submission. Plaintiff submitted his BP-9 to FCI Memphis on April 3, 2015. (ECF No. 77-8 at PageID 668.) The facility rejected his filing for status reason "INF" (failing to first try to resolve the dispute informally). (*Id.*) The "Remarks" section of Plaintiff's ARH explains that he should have sought informal resolution before filing his grievance. (*Id.*) It states that Plaintiff could refile the BP-9 within seven days. (*Id.*) Plaintiff, however, never refiled.

Inmates must try to resolve issues informally with staff before filing a BP-9 request.[10] 28 C.F.R. § 542.13(a). And if the staff member cannot resolve the issue, only then can the inmate file a formal BP-9 request. *Id.* at § 542.14(a); *see also Woodford*, 548 U.S. at 85 (discussing informal resolution requirement). Here Plaintiff's ARH reflects that he failed to refile his grievance after learning that he needed to first try to resolve the issue informally. And so, Plaintiff abandoned Claim 816342 without fully exhausting the administrative remedy process. The Court finds therefore that Defendants satisfied their burden of showing that Plaintiff failed to exhaust his administrative remedies for this claim. For that reason, the Court grants summary judgment for Defendants for Claim 816342.

### iv.    Claim 827225

Next the ARH shows that Plaintiff filed a BP-9 request in Case Number 827225 related to "other medical matters" in August 2015. (ECF No. 77-8 at PageID 670.) And Plaintiff filed

---

[10] Inmates in Community Corrections Centers ("CCCs") need not attempt informal resolution. 28 C.F.R. § 542.13(b). Because Plaintiff was an inmate at FCI Memphis, this exception does not apply to him.

this grievance around the time he claims that he discovered that Defendant Prince intentionally withheld medical information from him.  (*See* ECF No. 29-1 at PageID 194.)  Again, there is no dispute that this grievance related to a medical issue.  But Plaintiff failed to exhaust his administrative remedies in Claim 827225 too.  This is because he did not resubmit his BP-10 appeal after the facility rejected it for procedural defects.

According to Defendant's records, Plaintiff submitted this BP-9 to FCI Memphis on July 7, 2015.  That same day, the facility rejected his grievance for status reason "ONE."  (ECF No. 77-8 at PageID 669.)  Mr. Williams explains that "ONE" means that Plaintiff's BP-9 exceeded the page limit.  (ECF No. 77-5 at PageID 656.)  According to the "Remarks" section for this BP-9, the facility told Plaintiff that he had seven days to refile using the same form and with one attachment only.  (ECF No. 77-8 at PageID 669.)

So Plaintiff refiled his BP-9.  (*Id.*)  This time the facility closed the case with an explanation.  (*Id.*)  Neither party includes FCI Memphis's response, so the record is silent about why the facility closed the case.  Even still, Plaintiff then filed a BP-10 appeal with the Regional Office on August 11, 2015.  (*Id.* at PageID 670.)  The Regional Office rejected this appeal the same day for status reason "IRQ."  (*Id.*)  Mr. Williams explains that the Regional Office rejected this BP-10 because Plaintiff did not submit a copy of the facility request with his appeal.  (ECF No. 77-5 at PageID 656.)

Undeterred, Plaintiff refiled with the Regional Office nine days later.  (ECF No. 77-8 at PageID 670.)  But the Regional Office rejected his refiling again for the same reason—he failed

to attach a copy of the facility request. (*Id.*) Plaintiff did not refile again after his second rejection and he never appealed to the Central Office.[11]

The BOP can reject a request or appeal if it does not meet one of the filing requirements. 28 C.F.R. § 542.17(a). If it rejects a submission, the administrative remedy coordinator has to explain the reason for the rejection and give the inmate a reasonable extension of time to correct the mistake and refile. *Id.* at § 542.17(b); *see also Nunez*, 2008 WL 5096001, at *2. If the coordinator does not give the inmate an extension of time, the inmate may appeal the rejection to the next appeal level. *Id.* at § 542.17(c). The coordinator at the next appeal level may then affirm the rejection, direct the lower level to accept the submission, or accept the submission for filing. *Id.*

It is not clear here whether the Regional Office gave Plaintiff an extension of time to fix his mistake and to refile after it rejected his second BP-10. But even so, Plaintiff never appealed to the Central Office. And by failing either to refile with the Regional Office or to appeal to the Central Office, Plaintiff abandoned his efforts to pursue his administrative remedies. The Court thus finds that Plaintiff failed to exhaust his administrative remedies as to Claim 827225 as well. And so, the Court Grants summary judgment for Defendants on that claim too.

### v.    Claim 854880

Finally, the ARH reflects that Case Number 854880 relates to "staff misconduct." (ECF No. 77-8 at PageID 672.) But it gives no detail about that staff misconduct. Without more

---

[11] In his Amended Complaint, Plaintiff alleges that he exhausted his administrative remedies, presumably for this administrative case. (ECF No. 29-1 at PageID 180.) But yet, despite Plaintiff's allegations, his Administrative Remedy History sheet shows that he never complied with the Regional Office's instructions, nor did he appeal to the Central Office. And Plaintiff does not provide copies of his alleged BP-11 appeal or the Central Office's response to the BP-11.

information, "staff misconduct" could include diverse allegations including that prison staff provided inadequate medical care or withheld important medical information from Plaintiff. Plaintiff attached a BP-9 request that he allegedly filed here.[12]  (ECF No. 62-4 at PageID 385.) There, he discusses his medical care after his spine surgery.  (*Id.*)  What is more, Plaintiff relies on the grievances in Case 854880 to allege that he exhausted his administrative remedies on his medical claims.[13]  (*See* ECF No. 29-1 at PageID 180.)  As a result, there is question about whether Claim 854880 relates to Plaintiff's claims of inadequate medical care after his spine surgery.  (*See* ECF No. 62-4 at PageID 386.)

After close review, there is also a genuine issue of material fact about whether Plaintiff exhausted in Claim 854880.  Plaintiff alleges that he filed a BP-9 on June 12, 2015.  In fact, he attached that grievance.  (*Id.* at PageID 385–86.)  After filing that BP-9, the Warden responded. (*Id.* at PageID 387.)  But the Warden used the wrong header on his response, labeling it an "inmate request to staff member" instead of a response from the Warden.  (*Id.*)  Plaintiff then timely filed a BP-10 appeal in July 2015.  (*Id.* at PageID 389.)  He attached that BP-10 to his Response to Defendant's first Motion to Dismiss, yet the ARH does not reflect this BP-10.

Then in March 2016, he appealed to the Regional Office again.  (*Id.* at PageID 392.)  The prison gave that BP-10 a case number—854880.  It is unclear why his previous grievances are not associated with this claim number, or why they are not on his ARH.  The Regional Office

---

[12] This BP-9 does not have a case number.  Even so, following the BP-9 is Plaintiff's BP-10 appeal, which the prison associated with Case 854880.  (*See* ECF No. 62-4 at PageID 389.) Reading the facts in the light most favorable to Plaintiff and because Defendants failed to show otherwise, the Court finds that the BP-9 Plaintiff attached here relates to Case 854880.
[13] For example, to prove that he exhausted here, Plaintiff alleges that he filed a BP-10 appeal on March 3, 2016.  And yet the Administrative Remedy History sheet shows that the Regional Office received his BP-10 appeal in Case 854880 on March 10, 2016.  (See ECF Nos. 29-1 at PageID 180; 77-8 at PageID 672.)

rejected the BP-10 because Plaintiff did not include a copy of the Warden's response. (*Id.* at PageID 394.)  Next Plaintiff filed a BP-11 appeal to the Central Office. (*Id.* at PageID 395.)  Likewise, the Central Office rejected his appeal for the same reason. (*Id.* at PageID 397.)

Based on this evidence, the Court finds that there remains a genuine issue of material fact about whether Plaintiff exhausted his remedies for Claim 854880.  Defendants have not shown why Plaintiff's BP-9, the Warden's response, and Plaintiff's June 2015 BP-10 are missing from the ARH or how they may affect exhaustion here.  Of course, with more evidence, the proof may show these filings relate to other claims.  But if the Regional Office failed to respond to Plaintiff's June 2015 BP-10, then maybe he exhausted by later filing a BP-11.  With this gap in the ARH, a reasonable jury could find that Plaintiff exhausted his remedies here.  For that reason, the Court **DENIES** summary judgment on Claim 854880.

### vi.     Plaintiff's Other Administrative Claims

Even though Plaintiff's other two administrative cases did not involve medical matters, the Court notes that he failed to exhaust those cases.  In Claim 741173 about "DHO Appeal," Plaintiff did not appeal after the Regional Office denied his BP-10 appeal.  (ECF No. 77-8 at PageID 667.)   And in Claim 839359 about "administrative remedy procedures," Plaintiff filed two BP-9 requests with FCI Memphis.  (*Id.* at PageID 671).  After the facility closed the case with explanation, the Administrative Remedy History sheet shows that Plaintiff did not appeal.  So he never exhausted these claims.

In sum, the Court finds that Plaintiff failed to exhaust four of his six administrative cases.  But there are still factual disputes about whether he exhausted the claims in the Unnumbered Claim and Claim 854880.

## II.    Timeliness of Plaintiff's *Bivens* Claims

Plaintiff's unexhausted *Bivens* claims fail because they are untimely.  But because there
is a question of fact about whether he exhausted his remedies for his claims related to the
Unnumbered Case and Case 854880, there is a question of fact about whether those claims are
timely also.

Defendants argue that Plaintiff did not file his *Bivens* claims "until almost two years after
the last alleged event occurred," and so his claims are time barred.  (ECF No. 77 at PageID 474).
Plaintiff counters that his claims are timely and that Defendants waived this argument because
they failed to raise the issue in their first Motion to Dismiss.  (ECF No. 78 at PageID 707.)
Because Defendants did, in fact, argue in their first Motion to Dismiss that Plaintiff's claims
were time barred, they did not waive this argument and the Court considers it now.  (*See* ECF
No. 55 at PageID 302.)

The Sixth Circuit has found that state law governs the statute of limitations in a *Bivens*
action.  *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005); *Zundel v. Holder*, 687 F.3d
271, 281 (6th Cir. 2012).  Plaintiff's alleged injuries here occurred in Tennessee.  (*See* ECF No.
29-1.)  So Tennessee's statute of limitations applies.  Tennessee law requires a plaintiff to bring a
civil action under a federal civil rights statute "within one (1) year after the cause of action
accrued."[14]  Tenn. Code Ann. § 28-3-104(a)(1)(B).  And so, "the appropriate statute of

---

[14] "Although federal courts borrow state statute of limitations, federal law governs when a *Bivens*
claim accrues."  *Meeks v. Larsen*, 999 F. Supp. 2d 968, 980 (E.D. Mich. 2014).  And the statute
of limitations starts running "when the plaintiff knows or has reason to know of the injury which
is the basis of this action."  *Mason v. Dep't of Just.*, 39 F. App'x 205, 207 (6th Cir. 2002); *Sevier
v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (a claim accrues when a plaintiff "knows or has
reason to know of the injury which is the basis of the action").

limitations for [a] *Bivens* action arising in Tennessee is one year." *Mason v. Dep't of Just.*, 39 F.

App'x 205, 207 (6th Cir. 2002); *see also Zundel*, 687 F.3d at 281.

Plaintiff's Amended Complaint includes a detailed timeline of Defendants' alleged

misconduct. In his summary of the facts, he alleges that Defendants were deliberately indifferent

to his serious medical needs from April 2012 to October 2015.[15] (ECF No. 29-1 at PageID 196.)

But Plaintiff did not file this suit until almost two years later—in May 2017. (ECF No. 1.)

In any event, that does not necessarily mean Plaintiff's claims are untimely. "The time

during which a prisoner exhausts his administrative remedies tolls the one-year statute of

limitations." *Petty*, 2010 WL 1796573, at *7 (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th

Cir. 2000)). This means that "defendants are required to show that a prisoner's claims are

untimely even after tolling for the period during which he was exhausting his administrative

remedies." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 830 (S.D. Ohio 2020) (quoting *Surles v.*

*Andison*, 678 F.3d 452, 458 (6th Cir. 2012)).

### A.    Unnumbered Claim and Claim 854880

Because there is a question of fact about whether Plaintiff exhausted his remedies for his

*Bivens* claims in the Unnumbered Claim and Claim 854880, there is also a question about

whether those claims are timely. As explained in detail above, the record is unclear about

whether Plaintiff exhausted these claims. Because the Court cannot determine when Plaintiff

either (1) exhausted his claims or (2) stopped pursuing them, the Court likewise cannot

determine when the statute of limitations ended. So there is a genuine issue of material fact and

the Court **DENIES** summary judgment on the timeliness of these two claims.

---

[15] The last incident of alleged misconduct occurred on August 17, 2015. (*Id.* at PageID 201; *see also* ECF No. 62-1 at PageID 328.)

**B.      Claim 753685, Claim 816342, and Claim 827225**

Plaintiff's claims arising from Claim 753685 are time barred.  As the Court discussed earlier, the Regional Office responded to Plaintiff's BP-10 in Claim 753685 on December 13, 2013.  (ECF No. 77-8 at PageID 668.)  Plaintiff only had thirty days from the date the Regional Director signed the response to appeal to the Central Office.  28 C.F.R. § 542.15(a).  So he needed to appeal by January 12, 2014.  But he did not do so.  His claims therefore accrued in 2014 when he stopped pursuing his administrative remedies.  This means that his May 2017 Complaint is untimely.  (ECF Nos. 62-3 at PageID 371; 77-8 at PageID 672; 77-5 at PageID 655.)

What is more, the fact that Plaintiff appealed to the Regional Office in 2016 did not toll the statute of limitations.  For starters, his March 2016 BP-10 was almost three years late.  Allowing this appeal to toll the statute of limitations "would only accommodate [the plaintiff's] lack of diligence in exhausting his claims."  *Petty*, 2010 WL 1796573, at *8.  "The time is only tolled while the inmate diligently pursues his administrative claim."  *Smith v. United States*, No. 09-314-GFVT, 2011 WL 4591971, at *6 (E.D. Ky. Sept. 30, 2011); *see also Petty*, 2010 WL 1796573, at *7.  Plaintiff failed to file properly or diligently pursue his appeal of the Regional Office's response to his December 2013 BP-10.  And so, his March 2016 appeal did not toll the statute of limitations.  Instead, his claims accrued in 2014 and are time barred.

Plaintiff's claims arising from Claim 816342 are also untimely.  FCI Memphis rejected Plaintiff's BP-9 for this claim on April 3, 2015, and Plaintiff never refiled or appealed.  (*See* ECF No. 77-8 at PageID 668.)  Because Plaintiff stopped pursuing his administrative remedies, the statute of limitations never tolled beyond April 2015.  So Claim 816342 is also time barred.

And Claim 827225 is time barred for the same reason.  In August 2015, Plaintiff refiled his BP-10 with the Regional Office after it rejected his first appeal.  (*Id.* at PageID 670.)  But on August 24, 2015, the Regional Office rejected his refiling again.  (*Id.*)  Plaintiff failed to refile after his second rejection and he never appealed to the Central Office.  As a result, he stopped pursuing his administrative remedies in Case 827225 in 2015.

The bottom line is that Plaintiff's claims arising from his unexhausted administrative cases are untimely.  That said, there is an issue of fact about whether the Unnumbered Claim and Claim 854880 are timely, making summary judgment inappropriate for these two claims.

The Court now considers whether Plaintiff proves a deliberate indifference claim under *Bivens*.

III.    **Plaintiff's Deliberate Indifference Claims Under *Bivens***

Defendants argue that Plaintiff has not shown that their treatment of his medical conditions violated his Eighth Amendment rights.  (ECF No. 77 at PageID 476.)  This is mostly because Defendants treated Plaintiff many times for his alleged medical problems.  (*Id.*; *see* ECF Nos. 77-2 & 77-4.)  Plaintiff, however, alleges that Defendants were deliberately indifferent to his serious medical needs by (1) failing to disclose and document important medical information, including that he had a stroke in 2012; (2) failing to treat his various medical conditions; and (3) housing him in a Special Housing Unit ("SHU") after his spine surgery and failing to provide him with medical necessities.  (ECF No. 29-1 at PageID 193–94, 196.)

A.    **Legal Standard**

The Court looks to the Eighth Amendment to address these allegations.  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).  "Where prison [or jail] official(s) are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict

pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

The test to determine whether prison officials acted with deliberate indifference has an objective and subject component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). In the context of inadequate medical care claims, the Eighth Amendment's objective component requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895–97; *Brooks v. Celeste*, 39 F.3d 125, 127–28 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). And so, "[n]ot 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

The subjective component requires that prison officials acted with requisite intent—that they had a "sufficiently culpable state of mind in denying medical care" *Blackmore,* 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Under this requirement, a prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and choose to disregard that risk. *Farmer*, 511 U.S. at 837; *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). (finding that plaintiffs must show that prison officials acted with "deliberate indifference" to a

substantial risk that the prisoner would suffer serious harm).  "Knowledge of the asserted serious

needs or of circumstances clearly indicating the existence of such needs, is essential to a finding

of deliberate indifference."  *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

**B.      There Is a Dispute of Material Fact as to Plaintiff's Deliberate Indifference
          Claims**

To prove that there is no genuine issue of material fact about Plaintiff's deliberate

indifference claims, Defendants attach Plaintiff's medical records (ECF No. 77-4), a two-page

SENTRY report (ECF No. 77-3), and a declaration from Jessica Brown, the Mid Atlantic

Regional Office's Regional Health Systems Specialist.  (ECF No. 77-4).  In her position, Ms.

Brown responds to inmate correspondence about medical care and "has access to all inmates'

medical records on the Bureau's secure medical website."  (*Id.* at PageID 491.)  Here Ms. Brown

reviewed Plaintiff's medical records and explained them in her declaration.  (*Id.*)

All in all, this evidence falls short.  Defendants argue that "Plaintiff received appropriate

medical care for his alleged maladies" (ECF No. 77 at PageID 476), and that "the BOP providers

rendered professional medical opinions, treatment, and care in their best efforts to relieve

Plaintiff's symptoms."  (*id.* at PageID 477.)  Presumably Defendants believe that Plaintiff's

medical records show that he received appropriate medical care.  Yet those records do not

explain whether his medical care was appropriate or why Defendants chose certain courses of

treatment.

Defendants provide no other evidence about their conduct related to Plaintiff's medical

treatment.  With just a copy of Plaintiff's medical records and a declaration explaining those

medical records, there are still material facts in dispute because of Plaintiff's verified

complaint.[16]  True enough, the medical records show that Plaintiff had health problems and that he received medical treatment while at FCI Memphis.  But Plaintiff does not deny that he received medical care from Defendants.  Instead, Plaintiff argues that Defendants failed to diagnose properly or to treat certain medical conditions.  And it is unclear from his medical records alone whether Defendants were deliberately indifferent to Plaintiff's serious medical needs by failing to diagnose his alleged stroke or through their chosen course of treatment for his alleged stroke symptoms and spine problems.

Defendants further argue that Plaintiff's Amended Complaint "does not allege any specific facts suggesting that [Defendants] acted with a culpable state of mind when they made their medical decisions."  (*Id.* at PageID 477.)  But that is not so.  Plaintiff alleges that Defendant Prince "intentionally" withheld medical information from him and "purposefully mislead" him about the seriousness of his medical issues.  (ECF No. 29-1 at PageID 194.)  He further alleges that all Defendants "deliberately failed to document plaintiff's medical emergency on the morning of December 3, 2014, in an attempt to cover up their continued indifference and denial of plaintiff's serious medical needs."  (*Id.*)  Indeed, he alleges even more that each Defendant "intentionally, willingly, deliberately, and consciously, denied plaintiff proper and adequate medical care."  (*Id.* at PageID 205–16; *see also* PageID 199.)  And these are just some of his allegations about Defendants' state of mind.

All in all, Plaintiff sued here with a verified complaint where he alleges, among other things, that Defendants intentionally withheld important medical information from him, failed to diagnose his stroke, denied him treatment for his stroke symptoms and his spine problems, and

---

[16] A verified complaint has "the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

failed to provide him with medical necessities following his spine surgery. (ECF No. 29-1 at PageID 193–94, 196.) Plaintiff's medical records and Ms. Brown's declaration do not address these claims or speak to Defendants' state of mind. In the end, Defendants have the burden to show the lack of a genuine issue of material fact. *Mosholder*, 679 F.3d at 448. They have not done so here, and "the evidence presents a sufficient disagreement to require submission to a jury." *Liberty Lobby*, Inc., 477 U.S. at 251–52. The Court therefore **DENIES** summary judgment on these grounds.

## IV.   Defendants Bailey, Gaia, and Hargrove Are Immune from Suit Under *Bivens*

Defendants Bailey, Gaia, and Hargrove ("PHS Defendants") argue that they are immune from suit because they are members of the U.S. Public Health Service ("PHS"). (ECF No. 77 at PageID 478; 77-1; 52-1; 52-2.) Plaintiff argues that Defendants' claim is false and that they either waived this argument or the Court decided this issue against them in an earlier order. (ECF No. 78 at PageID 707). Though Defendants raised this issue in their original Motion to Dismiss (ECF No. 55 at PageID 298–300), this Court did not address the issue in its Order. (*See* ECF No. 66 at PageID 434.) So Defendants did not waive this argument. Nor did the Court decide this issue against them. Rather, the Court now finds that the PHS Defendants are, in fact, immune from suit here.

In *Hui v. Castaneda*, the Supreme Court held that the Public Health Service Act, 42 U.S.C. § 233(a), bars *Bivens* claims against PHS officers and employees for constitutional violations arising out of their official duties. 559 U.S. 799, 801–02 (2010). So if a Defendant is a PHS employee, "suit under the FTCA provides the 'exclusive' remedy for civil harms caused by such employees acting within the scope of their employment." *C.H. By & Through Shields v. United States*, 818 F. App'x 481, 482 (6th Cir. 2020).

All three PHS Defendants provided declarations swearing that they were PHS employees when the alleged misconduct occurred.  (ECF Nos. 52-1 at PageID 275; 52-2 at PageID 277; 77-11 at PageID 702.)  No evidence disputes these declarations.  What is more, all of Plaintiff's claims against the PHS Defendants are against them in their capacity as PHS employees providing medical services.  (*See* ECF No. 29-1.)  As a result, § 233(a) bars Plaintiff's *Bivens* claims against the PHS Defendants.

## V.      Qualified Immunity of the Individual Defendants

The Court now considers whether the other individual Defendants (Defendants Prince, Cabanero, Dobbins-Branch, and Bowden) are entitled to qualified immunity here.[17]  Defendants argue that they "are entitled to qualified immunity because Plaintiff cannot show that they violated a constitutional right."  (ECF No. 77 at PageID 477.)  This is because Plaintiff "did not plead sufficient facts establishing that Defendants acted with deliberate indifference to his health or safety when they provided medical care to him."  (*Id.*)

### A.      Qualified Immunity Standard

The qualified immunity analysis for § 1983 and *Bivens* claims are "identical."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Lyons v. Brandly*, No. 4:03CV1620, 2007 WL 7572652, at *13 (N.D. Ohio Sept. 26, 2007) ("[W]hen presented with a *Bivens*-based action, a court can in most instances borrow freely from civil rights principles developed under 42 U.S.C. § 1983.").

Government officials "are immune from civil liability, unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional

---

[17] The doctrine of sovereign immunity bars any of Plaintiff *Bivens* claims for money damages against the individual Defendants in their official capacities.  *Ashbrooke v. Block*, 917 F.2d 918, 924 (6th Cir. 1990); *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002).

rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).  To determine whether qualified immunity applies, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal references and citations omitted).  Under this standard, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The doctrine allows government officials "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (citations and quotations omitted).  The Sixth Circuit "has long recognized that the purpose of this doctrine is to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Nelson v. City of Battle Creek, Mich.*, No. 18-1282, 2020 WL 916966, at *2 (6th Cir. Feb. 26, 2020) (quoting *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005)).  "Once the defending officer raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *Coble v. City of White House*, 634 F.3d 865, 870–71 (6th Cir. 2011)).

**B.     Clearly Established Rights**

Government officials lose their immunity when "in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins*, 805 F.3d at 765.  A "clearly established right" is one "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v.*

33

*Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664(2012)).  Case law often defines those established rights.

"There need not be 'a case directly on point' for the law to be clearly established, 'but existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Nelson*, 2020 WL 916966, at *3 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).  "To violate a plaintiff's clearly established right, an officer's conduct must be such that, at the time of the allegedly-violative conduct, the contours of that right were sufficiently defined that every 'reasonable official would have understood that what he is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a right is clearly established, the Court looks to decisions of the Supreme Court, then to decisions of the Sixth Circuit, and finally to other courts of appeal, and asks whether these precedents placed the constitutional question at issue "beyond debate." *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (citing *Ashcroft*, 563 U.S. at 741). District court decisions do not create clearly established law.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. . . . Otherwise said, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02(1)(d), p. 134–36 (3d ed. 2011)).

## C.    Analysis of the Individual Defendants' Qualified Immunity

Plaintiff had a clearly established right to necessary medical treatment and there is a question of fact about whether Defendants' violated that right.  The Supreme Court has held that,

under the Eighth Amendment, prisoners have a constitutional right to medical care for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). What is more, at the time of the alleged constitutional violations here, the Sixth Circuit had found that a prisoner's right to be free from cruel unusual punishment in the medical care context was clearly established. *Taylor v. Franklin Cnty. Ky,*, 104 F. App'x 531, 543–44 (6th Cir. 2004); *Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009) ("[I]t is beyond dispute that the right to medical treatment for a serious medical need was clearly established"). And Defendants here do not seem to argue that Plaintiff did not have a clearly established right to necessary medical treatment—only that Plaintiff has not shown a constitutional violation. (*See* ECF No. 77 at PageID 477.)

But as the Court explained earlier, there is a genuine issue of material fact about whether the individual Defendants violated Plaintiff's constitutional rights. As a result, there remains a dispute about the individual Defendants' qualified immunity. For that reason, the Court **DENIES** summary judgment on qualified immunity over Defendants Prince, Cabanero, Dobbins-Branch, and Bowden.

### D.   Plaintiff must serve Defendants Prince, Cabanero, Dobbins-Branch, and Bowden with Process

The Court found before that Plaintiff did not properly serve Defendants Prince, Cabanero, Dobbins-Branch, and Bowden.[18] (ECF No. 66 at PageID 431 n.3.) Plaintiff still has not properly served these Defendants. Defendants thus ask the Court to direct Plaintiff to serve these Defendants properly within sixty days of this Order. (ECF No. 77 at PageID 480.)

---

[18] Plaintiff argues that Defendants either waived this argument or the Court found against Defendants on this issue. That said, in a prior order, the Court in fact found that Plaintiff had not served these Defendants yet. (*See* ECF No. 66 at PageID 432 n.3.)

Because much time has passed since the U.S. Marshal first tried to serve Defendants, the Court **ORDERS** Plaintiff to provide the Court with updated contact information for Defendants Prince, Cabanero, Dobbins-Branch, and Bowden within twenty-one (21) days after entry of this Order.  Once the Court receives this updated information, it will direct the U.S. Marshal to issue another alias summons.  If, however, Plaintiff fails to update this Court timely with the needed contact information, the Court may dismiss the claims against them for failure to prosecute.

## VI.     Certificate of Good Faith Under the THCLA

Defendants also ask the Court to dismiss Plaintiff's FTCA claims.[19]  (ECF No. 77 at PageID 480–82.)  They contend that Plaintiff's failure to file a certificate of good faith with his complaint "requires dismissal of his FTCA claims with prejudice under Tennessee substantive law."[20]  (*Id.* at PageID 470.)  Plaintiff, though, "denies any allegation that he did not comply" with the good faith certificate requirement and argues that Defendants' argument is an "untrue and a misleading statement of fact."  (ECF No. 78 at PageID 708.)

Plaintiff here did not attach a certificate of good faith to his Complaint or Amended Complaint.  But the Court finds that, to bring his FTCA claims, Plaintiff did not need to attach a

---

[19] The parties agree—and the Sixth Circuit has found—that Plaintiff exhausted his administrative remedies for his FTCA claims.  (ECF No. 74 at PageID 459.)

[20] Defendants did not raise this issue in their first motion to dismiss.  Under Federal Rule of Civil Procedure 12(g)(2), a party that moves under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Here, however, the Court construes Defendants' motion as a motion for summary judgment.  And Rule 56 does not include a similar limitation.  *See Averhart v. Ortho-Mcneil-Janssen Pharms.*, No. 3:09OE40028, 2014 WL 3866026, at *2 (N.D. Ohio Aug. 6, 2014) (finding that "Rule 12(g)(2)'s restriction is inapplicable to Rule 56(a)").  What is more, the Court would use its discretion to consider Defendants' argument "in the interest of judicial economy" anyway.  *McCoy v. Carlson*, No. 3:17-cv-432, 2020 WL 419439, at *2 (S.D. Ohio Jan. 27, 2020).

good faith certificate.  So for the reasons explained below, the Court **DENIES** Defendants'
Motion for Summary Judgment on this issue.

### A.      The Tennessee Health Care Liability Act

For claims under the FTCA that arose in Tennessee, the FTCA guides this Court to apply
Tennessee substantive law  while "federal law still governs the procedural aspects of the case."
*Brusch v. United States*, 823 F. App'x 409, 411 (6th Cir. 2020); *see also Young v. United States*,
71 F.3d 1238, 1242 (6th Cir. 1995) (finding that "liability on the part of the federal government
under the Federal Tort Claims Act is determined in accordance with the law of the state where
the event giving rise to liability occurred").  The Tennessee Health Care Liability Act
("THCLA") governs health care liability actions in Tennessee.  A health care liability action is
"any civil action, including claims against the state or a political subdivision thereof, alleging
that a health care provider or providers have caused an injury related to the provision of, or
failure to provide, health care services to a person, regardless of the theory of liability on which
the action is based."  Tenn. Code Ann. § 29-26-101(a)(1).

To bring a health care liability action under the THCLA, a plaintiff must prove three
elements by a preponderance of the evidence.  *See* Tenn. Code Ann. § 29-26-115(a).  The
plaintiff must show: (1) "the recognized standards of acceptable professional practice in the
profession"; (2) "[t]hat the defendant acted with less than or failed to act with ordinary and
reasonable care in accordance with such standard"; and (3) "[a]s a proximate result of the
defendant's negligent act or omission, the plaintiff suffered injures which would not otherwise
have occurred."  *Id.*

To prove these elements, generally the plaintiff must provide expert testimony.  *Young v.
First Cardiology, PLLC*, 599 S.W.3d 568, 571–72 (Tenn. 2020); *Ellithorpe v. Weismark*, 479

S.W.3d 818, 829 (Tenn. 2015).  And in any health care liability action that requires expert

testimony under § 29-26-115, the plaintiff "shall file a certificate of good faith with the

complaint."  Tenn. Code Ann. § 29-26-122.  The good faith certificate should "evidence[]

consultation with at least one expert who has provided a written opinion that there is a good faith

basis to maintain the action."  *Burns v. United States*, 542 F. App'x 461, 463 (6th Cir. 2013).  If

the plaintiff fails to attach a certificate of good faith, "the complaint shall be dismissed . . . absent

a showing that the failure was due to the failure of the provider to timely produce copies of the

claimant's records as provided in § 29-26-121 or demonstrated extraordinary cause."  § 29-26-

122.

### B.    This Is a Health Care Liability Action Under Tennessee Law

The certificate of good faith requirement only arises in health care liability actions.  The

Court finds that this case is a health care liability action.  Under Tennessee Code Annotated § 29-

26-101, a health care liability action is "any civil action . . . alleging that a health care provider or

providers have caused an injury related to the provision of, or failure to provide, health care

services to a person . . . ."  § 29-26-101(a)(1).

Plaintiff alleges that his health care providers at FCI Memphis harmed him by failing to

provide appropriate care.  (*See* ECF Nos. 29-1.)  As a result, Plaintiff's claims fall within the

THCLA's definition of a "health care liability action."  *See also Burns*, 542 F. App'x at 463

(discussing applying the good faith certificate requirement to FCI Memphis employees).  Indeed,

Tennessee courts have recognized that, "[g]iven the breadth of the statute, it should not be

surprising if most claims now arising within a medical setting constitute health care liability

actions."  *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 884 (Tenn. Ct. App. 2016).

As a result, the THCLA applies to Plaintiff's claims.  Even so, the THCLA's certificate of good faith requirement does not.  The Court explains why below.

### C.     Does the Certificate of Good Faith Requirement Apply to Plaintiff's FTCA Claims?

#### i.     The Sixth Circuit's Decision in *Gallivan*

The Sixth Circuit's decision in *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), is central to this analysis.

In *Gallivan*, a federal prisoner in Ohio brought a negligence claim against the United States under the FTCA.  943 F.3d at 292–93.  But Ohio Civil Rule 10(D)(2) requires a plaintiff alleging a medical negligence claim to include with the complaint an affidavit from a medical professional swearing that the claim has merit.  *Id.* at 293.  Because the plaintiff in *Gallivan* did not include an affidavit with his complaint, the district court dismissed his FTCA claims.  *Id.* The Ohio rule is similar to the Tennessee requirement.  Like the Tennessee certificate of good faith, the Ohio rule requires the plaintiff to file the affidavit along with the complaint.

On appeal, the Sixth Circuit applied the test outlined in *Shady Grove Orthopedic Associates. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010).  In *Shady Grove*, the Supreme Court considered whether a New York law prohibiting class actions seeking penalties or statutory minimum damages prevented a federal district court with diversity jurisdiction from considering a class action under Federal Rule of Civil Procedure 23.  *Shady Grove*, 559 U.S. at 396.  The Court applied a two-step test to this issue.  First, the court should determine whether a Federal Rule governs the question in dispute.  *Id.* at 398.  And second, if the Federal Rule controls, the court should apply the Rule unless it "exceeds statutory authorization or Congress's rulemaking power."  *Id.*

Restating the *Shady Grove* test, the *Gallivan* court explained that "[t]he first question we must ask is whether the Federal Rules of Civil Procedure answer the question in dispute: does someone need an affidavit of merit to state a claim for medical negligence?"  943 F.3d at 293. And if the Federal Rules "answer that question," the court must then ask "whether the Federal Rules are valid under the Constitution and the Rules Enabling Act."  *Id.*  The Sixth Circuit found that, "[i]f the answers to both those questions are yes, then our work is done[,]" and the court applies the Federal Rules.  *Id.*

Applying this test to the Ohio rule requiring the merit affidavit, the Sixth Circuit held that the Federal Rules answered the first question—"does someone need an affidavit of merit to state a claim for medical negligence?"  *Id.*  The court highlighted three different Federal Rules of Civil Procedure that answered this question—Rules 8, 12, and 9.  Rule 8 requires only "(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought."  *Id.*  It does not require that a plaintiff file an affidavit to state a claim.  *Id.*  What is more, Rule 12 does not require that a plaintiff provide evidentiary support to state a plausible claim for relief because "[e]ven without an affidavit, a complaint may move beyond the pleading stage and into discovery."  *Id.*  And Rule 9 identifies certain times when a plaintiff must satisfy heightened pleading requirements.  *Id.*  But because none of Rule 9's heightened pleading requirements apply to medical negligence claims, Rule 8's liberal pleading standard applies instead.  *Id.*  The court thus explained that, "[t]o impose a heightened pleading standard in [the plaintiff's] case would upset the careful balance struck by the Federal Rules." *Id.* at 293–94.  So in the end, the Sixth Circuit found that the Federal Rules answered the question in dispute—"Gallivan did not have to file an affidavit with his complaint to state a claim."  *Id.* at 294.

Next the court asked whether these Federal Rules were valid under the Constitution and the Rules Enabling Act. *Id.* at 294. The Sixth Circuit found this question "easy to answer," explaining that the Federal Rules are "presumptively valid." *Id.* As a result, the court held that the district court should have applied the Federal Rules and that the plaintiff need not follow Ohio law by providing a good faith affidavit with his complaint. *Id.* With all this in mind, the Court now applies *Gallivan*'s version of the *Shady Grove* test.

### ii.       Plaintiff Need Not Attach a Certificate of Good Faith

First, the Court has to decide whether the Federal Rules of Civil Procedure answer the question in dispute. And here, "the question in dispute" is almost identical to the question in *Gallivan*—does someone need a certificate of good faith (rather than an affidavit of merit) to state a claim for medical negligence under the FTCA?

Just as in *Gallivan*, the Federal Rules answer this question. Rule 8 only requires a short and plain statement of the court's jurisdiction, the plaintiff's claims, and the plaintiff's relief. It requires nothing more. And Rule 9 does not include a heightened pleading standard for medical negligence cases, so Rule 8's liberal pleading standard applies. Nor does Rule 12 require that Plaintiff attach any evidence to his complaint to state a claim for relief here. And so, the Federal Rules "answer the question in dispute"—Plaintiff does not have to file a certificate of good faith to state a medical negligence claim.

Second, this Court must determine whether these Federal Rules are valid. Just as the Sixth Circuit in *Gallivan* found, this Court agrees that the Federal Rules are valid procedural rules. Indeed, the Federal Rules of Civil Procedures are "presumptively valid" and the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before" it. *Gallivan*, 943 F.3d at 294; *Shady Grove*, 559 U.S. at 407. In short, following the Sixth Circuit's

41

opinion in *Gallivan*, this Court finds that the Federal Rules control and that the THCLA's good faith certificate requirement does not apply to Plaintiff's FTCA claims.

Defendants argue that *Gallivan* does not control here because the "Sixth Circuit has not expressly addressed the applicability of Tennessee's Certificate of Good Faith requirement under federal question jurisdiction." (ECF No. 77 at PageID 481 n.7.) But the claim in *Gallivan* was an FTCA claim too. 943 F.3d at 292–93. And the Sixth Circuit explained that "it doesn't make sense for federal courts to have one system of procedural rules in diversity cases and another in FTCA cases." *Id.* at 295; *see also Andes*, 2020 WL 3895780, at *5 (agreeing with the court's reasoning in *Gallivan* and finding that "applying the Tennessee certificate of good faith requirement in an FTCA case but not in a medical malpractice case invoking the federal court's diversity jurisdiction would lead to confusion and incongruous results."). So in the context of the FTCA, the Sixth Circuit suggested that its analysis in *Gallivan* applies whether the court has diversity jurisdiction or federal question jurisdiction.[21] 943 F.3d at 295.

Defendants further argue that "*Gallivan* does not bind the Court because the THCLA's Certificate of Good Standing requirement arises from the THCLA itself rather than the Tennessee Rules of Civil Procedure." (ECF No. 77 at PageID 481 n.7.) This is an effort to

---

[21] In his concurring opinion in *Brusch*, Judge Readler noted that in *Gallivan*, the Sixth Circuit "used a diversity-jurisdiction framework to determine whether that Ohio procedural rule should apply in a federal forum." 823 F. App'x at 412. The concurrence suggested that, when a court has jurisdiction under the FTCA, "the better approach" would be to view the issue "through the lens of federal question jurisdiction." *Id.* In that case, the court would "simply apply federal substantive and procedural law." *Id.* at 413. Because the FTCA requires courts to apply state substantive law, the concurrence explains that, "if the Tennessee good-faith certificate requirement is substantive, the FTCA demands we apply it." *Id.* With that concurrence in mind, the Sixth Circuit may later address whether the Tennessee certificate of good faith is required in an FTCA case. But for now, the court in *Brusch* left that question for another day. *Id.* And *Gallivan* applied the *Shady Grove* test to an FTCA claim. Plus, as discussed below, the *Gallivan* court held that, under the Supremacy Clause, even if it analyzed whether the Ohio rule were deemed substantive or procedural, it would make "no difference." *Gallivan*, 943 F.3d at 295.

argue that Tennessee's requirement is substantive rather than procedural.  But the Sixth Circuit in *Gallivan* addressed similar arguments and rejected them.  943 F.3d at 294–95.  That court made clear that "a Federal Rule (if valid) displaces inconsistent state law." *Id.* In fact, *Gallivan* held that it need not determine whether the Ohio rule at issue was substantive.  The court explained that "the government's argument that Ohio Rule 10(D)(2) is substantive under *Erie* makes no difference." *Id.* at 295.  In effect, the Sixth Circuit found that "the procedural v. substantive analysis was irrelevant to the case because a Federal Rule, if valid, displaces inconsistent state law under the Supremacy Clause." *Osborne v. Pickaway Cnty., Ohio*, No. 2:19-cv-3628, 2020 WL 1275722, at *4 (S.D. Ohio Mar. 17, 2020).  In the same way, whether the THCLA's good faith certificate requirement is substantive rather than procedural "makes no difference" to this Court's analysis.

Under the *Gallivan* analysis, that the good faith certificate requirement arises from the THCLA statute does not change the fact that the Federal Rules apply and that those rules are valid.  *See Andes v. United States*, No. 1:19CV00005, 2020 WL 3895780, at *5 (W.D. Va. July 10, 2020) (finding that the Sixth Circuit's analysis in *Gallivan* applies to Tennessee's certificate of good faith requirement); *see also Albright v. Christensen*, 507 F.Supp.3d 851, 860 (E.D. Mich. 2020) (finding that "[a]lthough the Michigan affidavit-of-merit statute is not identical to the Ohio rule at issue in *Gallivan*, they both require plaintiffs to file an affidavit along with their complaint," so the analysis in *Gallivan* "applies to Michigan's statute as well."); *Herriges v. Cnty. of Macomb*, No. 19-12193, 2020 WL 3498095, at *11 (E.D. Mich. June 29, 2020) (finding that, under *Gallivan*, "a plaintiff filing a complaint in federal court does not need an affidavit of merit to state a claim for medical negligence." (internal quotations omitted)).  But the law has not always been so straightforward.

Before *Gallivan*, courts in the Sixth Circuit had found that the THCLA's certificate of good faith requirement was substantive and that it applied in FTCA actions.[22]  *Burns*, 542 F. App'x at 463; *Daniels v. United States*, No. 11-5009, 2011 WL 13202357, at *1–2 (6th Cir. Oct. 7, 2011); *see also Williams v. United States*, 754 F. Supp. 942, 952 (W.D. Tenn. 2010).[23]  But in recent opinions, the Sixth Circuit has implied that *Gallivan* changed the law in this circuit. *Brusch*, 823 F. App'x at 411–12; *cf. Estate of Barnwell v. Grigsby*, 801 F. App'x 354, 361 n.4 (6th Cir. 2020).  For example, in *Brusch v. United States*, that court commented that before *Gallivan*, "the law in the Sixth Circuit was far from clear that the THCLA's good-faith affidavit requirement should not apply in federal court."[24]  *Id.*  This suggests that post-*Gallivan*, the law in the Sixth Circuit is now "clear" that Tennessee's good-faith certificate requirement does not apply in this Court.

In sum, this Court finds that the THCLA's good faith certificate requirement does not apply to Plaintiff's FTCA claims.  Instead, consistent with the holding in *Gallivan*, the Federal Rules of Civil Procedure control here.  And they did not require that Plaintiff provide a

---

[22] Almost every case that Defendants cite here to support their argument that the good faith certificate applies pre-dates *Gallivan*.  (ECF No. 77 at PageID 482.)

[23] In *Williams*, the district court found that Tennessee's good faith certificate requirement was substantive.  754 F. Supp. 2d at 952.  But the version of the THCLA at issue here is different than the statute the court addressed in *Williams*.  Now the THCLA requires plaintiffs to file a certificate of good faith with their complaint, much like the Ohio rule at issue in *Gallivan*.  *See* Ohio R. Civ. P. 10(D)(2); *see also* Mich. Comp. Laws § 600.2912d.  Plus after *Williams*, the Tennessee Supreme Court has referred to the amendments to the Tennessee law including the good faith certificate at issue here as "procedural" changes.  It said, "the 2008 and 2009 amendments to the Tennessee Medical Malpractice Act established new *procedural* requirements for plaintiffs seeking to file medical malpractice actions."  *Ellithorpe*, 479 S.W.3d at 825 (emphasis added).

[24] The Sixth Circuit in *Brusch* found that a district court's pre-*Gallivan* decision to dismiss a plaintiff's complaint for failure to file a certificate of good faith with her complaint was not clearly erroneous.  But it did so "because the law was not clear" and "the relevant caselaw actually favored the application of the THCLA at the time the district court dismissed [the plaintiff's] complaint."  823 F. App'x at 411–12.

certificate of good faith with his Complaint.[25]  As a result, the Court **DENIES** Defendants'

motion for summary judgment on Plaintiff's FTCA claims.

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff moves for appointment of counsel.  (ECF No. 79 at PageID 710.)  Under 28

U.S.C. § 1915, the "court may request an attorney to represent any person unable to afford

counsel."  28 U.S.C. § 1915(e)(1).  But "the appointment of counsel in a civil proceeding is not a

constitutional right."  *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v.*

*Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel

appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir.

1993) (finding that there is no constitutional right to counsel in a civil case).  Appointment

of counsel is thus "a privilege that is justified only by exceptional circumstances."  *Lavado*, 992

F.2d at 606 (internal quotation marks and citation omitted); *Lanier*, 332 F.3d at 1006.

When determining "whether exceptional circumstances exist, courts have examined the

type of case and the abilities of the plaintiff to represent himself."  *Lavado*, 992 F.2d at 606

(internal quotation marks and citations omitted).  "This generally involves a determination of the

complexity of the factual and legal issues involved."  *Id.*  What is more, appointment of counsel

is not appropriate when a pro se litigant's claims are baseless or when his chances of success are

extremely slim.  *Id.* (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see*

*also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

Plaintiff claims that this case is complex and that counsel "is necessary and warranted in

this matter to aid and assist plaintiff to fairly and properly present and navigate the complexities

---

[25] Defendants move for summary judgment on Plaintiff's FTCA claims solely on Plaintiff's
alleged procedural defect.  They provide no evidence related to the merits of the claim such as
whether they breached the applicable standard of care here.

of the rules, discovery, and legal issues of the case." (ECF No. 79 at PageID 711.)  He emphasizes that his claims will require expert witness testimony.  (*Id.* at PageID 712.)  He also claims that he "has been diligently trying to obtain an attorney on his own" but has not succeeded.  (*Id.* at PageID 717; ECF No. 79-1 at 720.)

The Court finds that appointment of counsel is warranted here.  Deliberate indifference and medical negligence cases are often complex.  To develop the facts, the parties will likely need to engage in significant discovery.  And Plaintiff will need to find and retain expert witnesses to support his claims.  All in all, the Court uses its broad discretion to find that Plaintiff needs assistance of counsel to present the essential merits of his claims to the Court.  So the Court **GRANTS** Plaintiff's motion for appointment of counsel.  The Court further respectfully **DIRECTS** the Clerk of Court to engage an attorney to represent Plaintiff.

## CONCLUSION

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.  The Court finds that there is a genuine issue of material fact about whether Plaintiff exhausted some of his administrative claims.  What is more, the Court finds also that there is a question about whether Plaintiff states a deliberate indifference claim and whether Defendants Prince, Cabanero, Dobbins-Branch, and Bowden are entitled to qualified immunity.  As a result, the Court **DENIES** summary judgment as to these issues.  What is more, the Court further **ORDERS** Plaintiff to provide the Court with updated contact information for Defendants Prince, Cabanero, Dobbins-Branch, and Bowden within twenty-one (21) days after entry of this order, so that the U.S. Marshal can issue summons.

The Court however **GRANTS** summary judgment as to Defendants Bailey, Gaia, and Hargrove because they are immune from suit under *Bivens*.  The Court thus **DISMISSES** them

from this action.  Next the Court **DENIES** summary judgment on Plaintiff's FTCA claims.

Finally, the Court **GRANTS** Plaintiff's Motion to Appoint Counsel.

   **SO ORDERED**, this 23rd day of August, 2021.

         s/Thomas L. Parker
         THOMAS L. PARKER
         UNITED STATES DISTRICT JUDGE